IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Landon L. Barker, | ) | PER CURIAM DECISION |
| | ) | |
| Petitioner, | ) | Case No. 20120412-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (November 1, 2012) |
| Department of Workforce Services, | ) | |
| | ) | 2012 UT App 315 |
| Respondent. | ) | |

-----

Original Proceeding in this Court

Attorneys:     Landon Barker, Springville, Petitioner Pro Se
               Suzan Pixton, Salt Lake City, for Respondent

-----

Before Judges Orme, Davis, and Voros.

¶1     Landon L. Barker seeks review of the final decision of the Workforce Appeals Board (Board). Barker asserts that the Board erred in determining that he quit his position with the Department of Corrections without good cause, thereby making him ineligible for unemployment benefits.

¶2     "[T]his court grants great deference to an agency's findings, and will uphold them if they are supported by substantial evidence when viewed in light of the whole record before the court." *EAGALA, Inc. v. Department of Workforce Servs.*, 2007 UT App 43, ¶ 8, 157 P.3d 334 (quotation marks and citation omitted). "Substantial evidence is that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion." *Smith v. Workforce Appeals Bd.*, 2011 UT App 68, ¶ 9, 252 P.3d 372. Furthermore, appellate courts will not reassess an agency's credibility

determinations or reweigh the evidence in a proceeding where conflicting evidence is presented. *See Questar Pipeline v. Utah Tax Comm'n*, 850 P.2d 1175, 1178 (Utah 1993). Rather, it is the agency's prerogative to assign weight to conflicting witness testimony. *See id.* "When we review an agency's application of the law to a particular set of facts, we give a degree of deference to the agency . . . [and] will uphold the [Board's] decision so long as it is within the realm of reasonableness and rationality." *Autoliv ASP, Inc. v. Department of Workforce Servs.*, 2001 UT App 198, ¶ 16, 29 P.3d 7.

¶3 Barker argues that the Board erred in its determination of whether he quit his employment or was discharged. More particularly, Barker asserts that his employer initially referred to the separation as a discharge and did not refer to it as a voluntary quit until Barker applied for benefits. Accordingly, Barker opines that the Board should have ruled in accordance with the employer's original description of the separation.[1] However, the terminology used by the parties to describe the separation does not control the determination of the cause of the separation; instead "[t]he circumstance of the separation as found by the Department, determines whether it was a quit or a discharge." Utah Admin. Code R994-405-204.

¶4 Both the Administrative Law Judge (ALJ) and the Board determined that the facts demonstrated that Barker had voluntarily quit his employment. Rule 994-405-106(4) states that "[i]f a claimant fails to return to work at the end of a leave of absence, the separation is a quit." *Id.* R994-405-106(4). Furthermore, rule 994-405-204(3) sets forth that "[i]f the claimant refused or failed to follow reasonable requests or instructions, and knew the loss of employment would result, the separation is a quit." *Id.* R994-405-204(3). The ALJ found that Barker both failed to return after a leave of absence and failed to follow reasonable requests by the employer to resolve his leave status after Barker extinguished his leave under the Family and Medical Leave Act (FMLA). Barker claimed to not have known that his FMLA leave had expired. However, the Board found this testimony to be self-serving and contradictory. The record supports the ALJ's and the Board's findings. Further, the ALJ and Board's application of the law to the facts

---

[1]Barker incorrectly interprets the employer's initial characterization of the separation. The October 6, 2011 "Notice of Intent for Separation" states that because Barker failed to obtain approval for his absences from work and because he had been absent from work for more than three consecutive days without approval, Barker was considered "to have abandoned [his] position and resigned [his] employment."

was reasonable and rational. Accordingly, the ALJ and Board correctly analyzed the separation as a voluntary quit instead of a discharge.

¶5 A claimant who voluntarily quits employment may still be entitled to benefits if he shows good cause for the separation or if denying benefits would be contrary to equity and good conscience. *See id.* R994-405-101(3).

> To establish good cause, a claimant must show that continuing the employment would have caused an adverse effect which the claimant could not control or prevent. The claimant must show that an immediate severance of the relationship was necessary.

*Id.* R994-405-102. Additionally, even if an adverse effect is shown, good cause may not be found if the claimant reasonably could have continued working while looking for other employment. *See id.* R994-405-102(1)(b)(i). The Board determined that Barker had failed to demonstrate good cause for quitting his job based upon his failure to return to work or to discuss his continued absence with the appropriate supervisors. In so doing, the Board found that Barker failed to demonstrate that continuing employment would have caused an adverse effect which Barker could not control or prevent. It further found that Barker had full control over his ability to discuss these issues with his superiors. Accordingly, the Board determined that Barker failed to demonstrate that he had good cause to quit his employment.

¶6 Additionally, the Board determined that denying benefits in this case would not be contrary to equity and good conscience. *See id.* R994-405-103. In so doing, the Board found that Barker acted unreasonably in failing to contact his superiors to discuss his leave status after it had been communicated to him several times that his FMLA leave had expired and he needed to make different arrangements. Accordingly, the Board found that because Barker's conduct was unreasonable, Barker failed to demonstrate that he was entitled to benefits under the equity and good conscience standard. Under the circumstances of this case, we conclude that the Board's findings and conclusions are supported by the record and are within the bounds of reasonableness and rationality.

¶7 Accordingly, we decline to disturb the Board's ruling.

_____
Gregory K. Orme, Judge


_____
James Z. Davis, Judge


_____
J. Frederic Voros Jr., Judge